**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JAMES W. DYER, | : | |
| Plaintiff, | : | Case No. 16-CV- |
| v. | : | |
| HIPPOCAMPUS, INC., d/b/a HIPPOCAMPUS PRESS and DERRICK HUSSEY, | : | |
| Defendants. | : | |

**VERIFIED COMPLAINT**
**AND JURY DEMAND**

Now comes plaintiff James W. Dyer ("Mr. Dyer" or "Plaintiff") and, pursuant to the United States Copyright Act, alleges for his Complaint as follows:

**Preliminary Statement**

1. Mr. Dyer, as the assignee and owner of copyrights to four short stories authored by his late grand-father, C.M. Eddy, Jr., brings this action against Hippocampus, Inc., d/b/a Hippocampus Press ("Hippocampus"), and defendant Derrick Hussey ("Mr. Hussey") (collectively, the "Defendants") who have communicated to Dyer and others their intention to publish those copyrighted stories this summer in a compilation of H.P Lovecraft's works, without Mr. Dyer's permission.

2. The stories at issue, as described more fully below, were originally published and copyrighted in 1924 and 1925 and renewed in 1951, 1952 and 1953 by Rural Publishing Corporation ("Rural Publishing"), which had published them in the magazine *Weird Tales* as part of a compilation of stories. As set out more fully below, while Rural Publishing maintained the

Copyright to the compilation of stories contained within its magazine, pursuant to the Copyright Act, and as described in the United States Supreme Court decision of *New York Times Co. v. Tasini*, 533 U.S. 483 (2001), Mr. Eddy, as the author of the stories, retained by operation of law the copyrights to the four individual stories here at issue, which remain active and have been assigned to Plaintiff.

3. Despite repeated demands by Plaintiff that Defendants refrain from publishing these stories, Hippocampus has indicated its intention to publish the stories this summer, with or without Plaintiff's permission to do so. Accordingly, Mr. Dyer brings this action for preliminary and permanent injunctive relief and statutory damages pursuant to the United States Copyright Act for Defendant's willful violations of the Copyright Act.

**The Parties and Jurisdiction**

4. The Plaintiff, Mr. Dyer, is an individual who resides at 134 Westmoreland Street, Narragansett, Rhode Island. As set out more fully below, Mr. Dyer is the assignee of the copyrighted stories at issue in this action.

5. The defendant Hippocampus, Inc., d/b/a Hippocampus Press, is a corporation organized under the laws of the State of New York, with its agent for service of process located at 247 7th Street, #2, Brooklyn New York 11215.

6. The defendant Derrick Hussey is a natural person who is a citizen of New York, who resides at 244 Madison Avenue, Apartment 3B, New York, New York 10016.

7. This Honorable Court has subject matter jurisdiction over this dispute under the United States Copyright Act, 17 U.S.C. § 501, 28 U.S.C. § 1338.

8. This Honorable Court has personal jurisdiction over Hippocampus as, upon information and belief, it sells substantial products into Rhode Island by way of its web-site

[www.hippocampuspress.com], and its officers and agents make frequent trips into Rhode Island to conduct and promote its business within it. This Court further has personal jurisdiction over Hussey, as he frequently is present and conducts business within Rhode Island such as to satisfy the long-arm statute and Constitutional requirements of due process.

## Facts

***The Association of C.M Eddy, Jr. and H.P Lovecraft***

9. Plaintiff's late grandfather C.M. Eddy, Jr. ("Eddy") was an author, songwriter and theatrical booking agent who lived in Providence, Rhode Island from his birth in 1896 until 1967, when he died. Although he was an accomplished author in his own right, who published many detective, mystery, suspense, and horror stories in the "pulp fiction" magazines that thrived in the days before television, he now may be best known for his friendship and collaborations with the famous author and influential developer of the literary horror genre, H.P. Lovecraft ("Lovecraft"), also of Providence, Rhode Island.

10. Eddy and Lovecraft met in Providence in the 1920s and developed into friends and literary associates. Eddy and Lovecraft frequently socialized at their respective homes on the east side of Providence and were known to edit and critique each other's works. Lovecraft reportedly read his manuscripts aloud to Eddy and his wife, Muriel, who typed many of Lovecraft's stories from his manuscripts. Among other collaborations, Eddy and Lovecraft were hired jointly by the famous escape artist and illusionist Harry Houdini to aid him in investigating and exposing fraudulent "psychics," and to collaborate in ghost-writing a book for Houdini entitled *The Cancer of Superstition*, which was published in part as ghost-written for Houdini by Eddy.

11. Eddy and Lovecraft remained friends and collaborators until Lovecraft's death from intestinal cancer in 1937. In the decades following his death, Lovecraft, who was relatively unknown during his lifetime, developed a popular following and – almost eighty years after his death -- is now regarded as one of the most influential horror writers of all time. He also holds a special significance in the history of Providence, where his birth and death are commemorated on an annual basis by his fans and his grave at Providence's Swan Point Cemetery (where Eddy is also interred) has become a tourist attraction.

***The Copyrights to Eddy's Published Works***

12. Among the many stories published by Eddy during the 1920s were four short stories, all of which were published in Rural Publishing's industry leading *Weird Tales* Magazine. Those four stories are entitled: *Ashes*, *The Ghost-Eater*, *The Loved Dead* and *Deaf, Dumb and Blind* (the "Copyrighted Works").

13. Each of the Copyrighted Works was originally copyrighted by Rural Publishing as part of a compilation of stories, or composite work, contained within different issues of its *Weird Tales* Magazine, as follows:

- *Ashes*, Original Publication *Weird Tales,* March, 1924, Volume 3, Issue 3, © 1924 Rural Publishing Corporation – B609499, Renewed February 1951 – R74538 Weird Tales (PCW) Proprietor of Composite Work;
- *The Ghost-Eater*, Original Publication *Weird Tales,* April 1924, Volume 3, Issue 4, © 1924 Rural Publishing Corporation – B612119, Renewed February, 1951 – R74539 Weird Tales (PCW) Proprietor of Composite Work;

- *The Loved Dead*, Original Publication *Weird Tales*, May-June-July 1924, Volume 4, Issue 2, © 1924 Rural Publishing Corporation – B620017, Renewed March 1952 – R92330 Weird Tales (PCW) Proprietor of Composite Work; and
- *Deaf, Dumb and Blind*, Original Publication Weird Tales, April 1925, Volume 5, Issue 4, © 1925 Rural Publishing Corporation – B658386, Renewed February, 1953 – R107981 Weird Tales (PCW) Proprietor of Composite Work;

14. The renewals to the Copyrights to the compilations containing the Copyrighted Works remain in effect and they are subject to the protections afforded by the Copyright Act.

15. Although the copyrights to the composite works continue to be owned by Rural Publishing and/or its successors, under the Copyright Act and the well-established case law interpreting it, the copyrights to the individual stories contained within the compilations reverted to the authors of those stories at their publication and remain with them or their successors or assigns. As stated by the United States Supreme Court in *New York Times Co. v. Tasini,* 533 U.S. 483 (2001):

> Under the Copyright Act, as amended in 1976, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a). When, as in this case, a freelance author has contributed an article to a "collective work" such as a newspaper or magazine, see § 101 (defining "collective work"), the statute recognizes two distinct copyrighted works: "Copyright in *each separate contribution to a collective work is* distinct from copyright in *the collective work as a whole . . . ."* § 201(c) (emphasis added). Copyright in the separate contribution "vests initially in the author of the contribution" (here, the freelancer). *Ibid.* Copyright in the collective work vests in the collective author (here, the newspaper or magazine publisher) and extends only to the creative material contributed by that author, not to the "preexisting material employed in the work," § 103 (b). *See also Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 358 (1991) (copyright in "compilation" – a term that includes "collective works," 17 U.S.C. § 101 – is limited to the compiler's original "selection, coordination, and arrangement").

16. This law applies to renewal copyrights as it did to the original copyrights. As summarized by Nimmer – the leading commentator on Copyright law -- "the proprietor of a composite work who copyrighted an individual contribution under the blanket for the entire work was held to be a trustee of the copyright in that contribution for the benefit of the individual author-contributor . . . *regardless of whether the proprietor or the author files for renewal in the name of the proprietor . . . it is the author who is entitled to the beneficial enjoyment of such renewal copyright.*" 3 Melville B. Nimmer, *Nimmer on Copyright* § 9.03[B] (emphasis added).

17. That Rural Publishing's renewals of the Copyrights to the composite works also served to renew the individual author's Copyrights here at issue was confirmed by the United States Copyright Office to Plaintiff in a letter dated April 11, 2012, in which it stated, "the various renewals submitted and accepted in the 1950's by Weird Tales (PCW), as owner of the composite work, extended the copyright term for the individual works contained within the larger composite work. Further, under the current Copyright Act, the term of the copyright extends for 95 years from the date copyright was originally secured. 17 U.S.C. 304(b)." (A copy of the Copyright Office's Letter confirming the validity of the Copyrights to the individual stories is annexed hereto as Exhibit A.)

18. Eddy's Copyrights in the four Copyrighted Works here at issue were passed to his wife Muriel Eddy on his death. On Muriel's passing, the copyrights to the Copyrighted Works were left to their daughter, Fay Dyer ("Ms. Dyer"). On June 20, 2001, Ms. Dyer, in turn, assigned her rights to the Copyrighted Works to her son, the Plaintiff James Dyer. (Copy of the written assignment of Ms. Dyer's rights to the Copyrighted Works is annexed hereto as Exhibit B.)

19. In 2008, the Copyrighted Works were published by Fenham Publishing, Inc., with Mr. Dyer's permission, in a volume of Eddy's short stories entitled *The Loved Dead and Other Tales ("The Loved Dead").* *The Loved Dead* is in print and continues to be offered for sale by

Fenham Publishing through, among other places, Amazon.com and its own web-site, FenhamPublishing.com. Plaintiff is the principal and owner of Fenham Publishing.

20. Due to the continued popularity of Lovecraft and Houdini, as well as Eddy's well-known association with each of them, multiple publishers have, over the past several years, sought permission of Plaintiff to republish the short stories of Eddy, including the Copyrighted Works. In all such cases, Plaintiff has refused to convey or license the Copyrighted works, preferring to continue to control and market the stories through his own publishing house, Fenham Publishing.

21. During the summer of 2015, Plaintiff learned that Hussey and Hippocampus were planning to publish the Copyrighted Works and entered into correspondence with the principal, of Hippocampus, defendant Derrick Hussey, in which he informed him of his copyright, and demanded that he not publish the Copyrighted Works. In each instance, Plaintiff's requests were rebuffed.

22. More recently, Plaintiff enlisted counsel to make demand that Hippocampus and Hussey refrain from publishing the Copyrighted Works. In the most recent correspondence, Hippocampus's counsel took the position that because the copyrights had been registered and renewed by Rural Publishing, Plaintiff's copyrights were ineffective. It therefore announced that Hippocampus and Hussey will proceed with publication of the stories and that such publication is planned for this summer. (Copies of correspondence between counsel are annexed hereto as Exhibit C.)

**Claim for Relief for Copyright Infringement**
**(against Hippocampus and Mr. Hussey)**

23. Plaintiff hereby repeats and incorporates the allegations contained in paragraphs 1 through 22 of the Verified Complaint as if set forth in full herein.

24. As described above, the Plaintiff is the owner of valid copyrights to the Copyrighted Works.

25. Defendants have copied or intend to copy and sell Plaintiff's copyrighted material without license or authorization in violation of 17 U.S.C. § 106.

26. Defendants' acts were and are intentional and knowing, constituting willful copyright infringement under the Copyright Act, 17 U.S.C. § 504.

27. As a result of Defendants' infringing conduct, Plaintiff is entitled to recover their actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

28. Alternatively, Plaintiff is entitled to statutory damages up to a maximum of $150,000 per work infringed, pursuant to 17 U.S.C. § 514(c).

29. Plaintiff is also entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

30. Defendants' infringement of Plaintiff's Copyrighted Works will cause irreparable harm to Plaintiff, which cannot be adequately remedied by money damages.

WHEREFORE, the Plaintiff James W. Dyer respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

1. Temporarily, preliminarily and permanently enjoining Defendants from publishing the Copyrighted Works;
2. awarding compensatory and/or statutory damages, including $150,000.00 per willful infringement, in a total amount to be determined at trial;
3. awarding Plaintiff his Attorneys' fees as a prevailing party pursuant to the Copyright Statute; and
4. granting such further relief as this Honorable Court deems appropriate and just.

**Jury Demand**

The Plaintiff demands a jury trial upon all claims so triable.

Respectfully Submitted,

JAMES W. DYER,

By his attorneys,

/s/ Charles S. Beal
Charles S. Beal (#5559)
BEAL LAW, LLC
55 Pine Street, Suite 400
Providence, RI 02903
Tel: (401) 270-6200
Fax: (401) 490-0117
cbeal@beallawllc.com

Dated: June 13, 2016